UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 10-96- KSF

ALLEN KING and BRUCE KING, as
Administrators of the Estate of Roger King                             PLAINTIFFS

VS.                           **OPINION & ORDER**

ERIC TAYLOR, in his individual capacity
as a Kentucky State Trooper                                             DEFENDANT

\* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon the motion in limine of the Plaintiffs, Allen King and Bruce King, as Administrators of the Estate of Roger King ("Plaintiffs"), to exclude the testimony of Lt. Bobby Day of the Kentucky State Police ("KSP") pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137 (1999), and Federal Rule of Evidence 702 [DE #75]. This motion is fully briefed and is ripe for review.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

On November 25, 2009, in Boyle County, Kentucky, KSP Trooper Eric Taylor and officers from the Boyle County Sheriff's Office attempted to serve an emergency protective order and an arrest warrant on Roger King ("King"). However, when the officers went to serve the EPO and arrest warrant on King at his home, King did not answer the front door or a side door. The officers moved to the rear of the house and saw a set of double-paned glass doors at the top of the porch that

1

provided a line of sight to the interior of the house. Through the glass doors, one of the officers saw King lying down on a couch with a blanket partially covering him. With Trooper Taylor providing cover, one of the other officers approached the glass door, knocked loudly, announced that he was with the Sheriff's Department and called for King to come to the door, while also pressing his shoulder against the door pane so that his reflective Boyle County Sheriff's Office patch would be visible through the glass, and illuminating the interior of the home with his hand-held flashlight. Trooper Taylor alleges that, upon seeing the police officers at the rear of his house, King sat up on his couch, looked at the officers angrily, retrieved a large, fully-loaded firearm (a Taurus Judge revolver) from his left side and turned toward the officers, pointing his weapon at them. Trooper Taylor alleges that he responsively fired his M-16 at King. King died of the gunshot wound. Plaintiffs do not contest that King had a gun with him on the couch. Rather, Plaintiffs argue that Taylor shot King from King's back porch while King was lying on his couch. According to Plaintiffs, King was not extending a gun in the officers' direction and may have been sleeping when he was shot.

Plaintiffs filed this civil action pursuant to 42 U.S.C. § 1983, alleging the following claims against Trooper Taylor: (1) unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution (Count I); (2) assault and battery (Count II); and (3) negligence (Count III) [DE #1]. Plaintiffs are seeking compensatory and punitive damages from Trooper Taylor [*Id.*].

Trooper Taylor has identified Lt. Bobby Day as an expert to testify in this matter. According to his expert report, Lt. Day will testify that Trooper Taylor acted in accordance with his training and accepted police practices during the execution of the warrant and EPO against King [DE #75-3].

However, Plaintiffs argue that testimony that an officer violated, or complied with, a department's policies and procedures is irrelevant and inadmissible in an excessive force case. Plaintiffs argue that the fundamental question for the jury in this case is whether Taylor exercised excessive force and violated King's constitutional and statutory rights. According to Plaintiffs, because Lt. Day testified that he was not offering any opinions as to whether Trooper Taylor's actions complied with the Constitution, he cannot be permitted to testify.

II.     **RULE 702 AND THE SUPREME COURT'S HOLDINGS IN DAUBERT AND KUMHO TIRE**

Rule 702 of the Federal Rules of Evidence states the requirements for admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and (3) the expert has reliably applied the principles and methods to the facts of the case.

Fed.R.Evid. 702. Generally, this rule "should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." *Morales v. American Honda Motor Co., Inc.*, 151 F.3d 505, 516 (6th Cir. 1998).

"[U]nder the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). As the Supreme Court stated in *Daubert*:

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the

>reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts at issue.

*Id*. at 592-93. The proponent of expert testimony must prove by a preponderance of the evidence that the testimony is reliable, not that it is scientifically correct. *Id*. at 593; Fed.R.Evid. 104(a).

In determining whether to admit or exclude proffered expert testimony, the court must act as a "gatekeeper" to ensure that the expert is duly qualified to render an expert opinion, that his testimony will assist the trier of fact, and that the proffered testimony is reliable. *Id*. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court clarified that this "gatekeeper" function applies to all expert testimony, not just scientific testimony. *Id*. at 147 (explaining that Rule 702 makes "no relevant distinction between 'scientific' knowledge and 'technical' or 'other specialized' knowledge. It makes clear that any such knowledge might become the subject of expert testimony."). However, the court's gatekeeper role under *Daubert* "is not intended to supplant the adversary system or the role of the jury." *Allison v. McGhan*, 184 F.3d 1300, 1311 (11th Cir. 1999). *See also United States v. 14.3 Acres of Land Situated in LeFloure County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996)(The Court is mindful that its "role as gatekeeper is not intended to serve as a replacement for the adversary system."). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." *Daubert*, 509 U.S. at 596. In addition, the Court should be mindful of the definition of relevance provided by FRE 401: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed.R.Evid. 401. "The Rules' basic standard of relevance thus is a liberal one." *Daubert*, 509 U.S. at 587.

4

In 2000, Rule 702 was amended in response to *Daubert* and cases applying it, such as *Kumho Tire*. It affirms the trial court's role as gatekeeper and provides general standards for the trial court to use to assess the reliability and helpfulness of proffered expert testimony. Advisory Committee Notes to Rule 702. In fact, the advisory comments to the 2000 amendments to Rule 702 note that "[a] review of the case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." Advisory Committee Comments to the 2000 Amendments to Rule 702. Indeed, the trial court's gatekeeping role does not permit it to reject admissible expert testimony.

**III.   ANALYSIS**

Plaintiffs do not dispute Lt. Day's qualifications to testify as an expert on police procedures and training. Indeed, Lt. Day has significant experience and training in police procedures and training, including ten years of experience as an active member of the KSP Special Response Team, during which time his duties included high risk warrant service, warrant service planning and critical incident management, as well as experience as an instructor at the Kentucky State Police Academy and with OpTac (Operational Tactics) International [DE # 75-2, 75-4]. As of November 2010, Lt. Day worked as an Operations Lieutenant at KSP Post 13 [*Id*.]. He has received many awards for his service, include Post 9 Trooper of the Year in 1994 and Special Operations Trooper of the Year in 1997 and 2000, and the Ernie Bivens Outstanding Instructor Award in 2008, 2009 and 2010 [*Id*.]. Lt. Day has also had extensive training in SWAT and sniper tactics [*Id*.]. Thus, the Court finds that Lt. Day is qualified to render an opinion in this case on police procedures and training. *See Bush v. Michelin Tire Corp.*, 963 F.Supp. 1436, 1443 (W.D.Ky. 1996)("Experience is sufficient to establish

5

expertise. The key issue in deciding expertise is whether the expert has sufficient experience regarding the opinion to which he will testify.")(citations omitted).

Rather, Plaintiffs argue that Lt. Day's proposed testimony that Trooper Taylor acted in accordance with his training and accepted police practices should be excluded because it is irrelevant and, accordingly, does not assist the trier of fact. As noted by Plaintiffs, claims involving the alleged use of excessive force by a police officer are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396, 109 S.Ct. 1865 (citations omitted). The proper application of this "reasonableness" test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. (citations omitted). Moreover, the "reasonableness" of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," *id*., and "must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Id*. at 396-397 (citations omitted). Because the inquiry is an objective one, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397 (citations omitted). Thus, "[a]n officer's evil intentions

will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id*. (citations omitted). With respect to the use of deadly force, the Supreme Court has held that "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

Plaintiffs rely on *Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992) and similar cases holding that, in § 1983 cases, the relevant question is whether the officer violated the Constitution, not whether that officer should be disciplined by the local police force. *Id*. at 347. In *Smith*, the Court held that, as a matter of law, a police officer did not act unreasonably in using deadly force against a motorist who was shot by the officer while fleeing in his car after a high-speed chase, thus affirming the district court's grant of summary judgment for the defendants. *Id*. at 344. The Court noted that the fact that the officer's actions may have violated the city's policies regarding police use of force does not require a different result. *Id*. at 347. As explained by the Court, "[a] city can certainly choose to hold its officers to a higher standard than that required by the Constitution without being subjected to increased liability under § 1983. To hold that cities with strict policies commit more constitutional violations than those with lax policies would be an unwarranted extension of the law, as well as a violation of common sense. [Plaintiff's] position, if adopted, would encourage all governments to adopt the least restrictive policies possible." *Id*. at 347-348. Similarly, in *Woods*, another case relied upon by Plaintiffs, the Court noted that "the receipt of a written reprimand from the Jefferson County Police Department for a violation of its use of force policy is not conclusive to whether or not [plaintiff's] Fourth Amendment rights were violated," nor does it

necessarily create an issue of fact precluding summary judgment. *Woods v. Jefferson County Fiscal Court*, 2003 WL 145213 at *4, FN1 (W.D.Ky., Jan. 8, 2003)(unpublished).

Indeed, these cases - which were notably all rendered in the summary judgment context - support the proposition that, in an excessive force case, an officer's compliance with, or violation of, departmental policy is not conclusive as to whether or not the suspect's Fourth Amendment rights were violated. *Smith*, 954 F.2d at 347; *Walker v. Davis*, 643 F.Supp.2d 921, 926 FN5 (W.D.Ky. 2009); *Richardson v. Board of Educ. of Jefferson Co. KY*, 2007 WL 2319785 (W.D.Ky. Aug. 10, 2007); at *2 *Woods*, 2003 WL 145213 at *4. Thus, an officer's compliance with departmental policy does not require finding that the officer is entitled to judgment as a matter of law. Similarly, the fact that an officer has failed to comply with departmental policy does not always create an issue of fact precluding summary judgment in such a case.

However, this proposition does not necessarily mean that evidence of police training and procedures is never admissible for any purpose in a § 1983 excessive force case. Notably, "the Sixth Circuit in *Smith* did not rule that [local law enforcement standards] could not be considered by a fact finder, only that they cannot be understood to define the constitutional boundaries by which an officer's conduct is to be judged." *Alvarado v. Oakland Co*., 809 F.Supp.2d 680, 690 at FN5 (E.D.Mich. 2011). In considering whether an officer's actions are "objectively reasonable," all of the facts and circumstances confronting the officer may be considered, including standard police procedures. *Nelson v. County of Wright*, 162 F.3d 986 (8th Cir. 1998). *See also Ludwig v. Anderson*, 54 F.3d 465, 472 (8th Cir. 1995)("Although these 'police department guidelines do not create a

constitutional right,' *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993), they are relevant to the analysis of constitutionally excessive force.")(citing *Garner*, 471 U.S. at 18-19)).[1]

Thus, in *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893 (6th Cir. 2004), a § 1983 case alleging that police officers used excessive force in subduing an arrestee, the Sixth Circuit held that the district court did not err in admitting the testimony of an expert witness about the use of excessive force by police because that expert "had considerable experience in the field of criminology and because he was testifying concerning a discrete area of police practices about which he had specialized knowledge." *Id*. at 908-909. The Court noted that "[c]ourts have permitted experts to testify about discrete police-practice issues when those experts are properly credentialed and their testimony assists the trier of fact." *Id*. at 908 (citing *Dickerson v. McClellan*, 101 F.3d 1151, 1163-64 (6th Cir.1996), *Kladis v. Brezek*, 823 F.2d 1014, 1019 (7th Cir. 1987)). Similarly, district courts directly considering the admissibility of expert testimony regarding police procedures have found such testimony to be admissible, so long as the expert refrains from expressing legal conclusions. *Alvarado v. Oakland Co.*, 809 F.Supp.2d at 690-91 (expert may testify regarding nationally recognized police standards governing the use of excessive force, as well as the specific departmental excessive force guidelines to which the officer was subject, but could not opine as to whether the officer's conduct in arresting the arrestee was unreasonable under those guidelines or practices); *United States v. Eberle*, 2008 WL 4858438 at *3 (E.D.Mich., Nov. 10,

---

[1] In *Garner*, the United States Supreme Court held that, although "[t]he use of deadly force to prevent the escape of all suspects, whatever the circumstances, is constitutionally unreasonable," "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Garner*, 471 U.S. at 11. Notably, in evaluating the reasonableness of a rule that deadly force may be used against any fleeing felon, the Court examined the policies of individual police department nationwide. *Id*. at 18-19.

2008)(unpublished)(expert witnesses would be precluded from expressing a legal conclusion as to the ultimate issue of whether defendant's conduct amounted to "excessive force," but would be permitted to offer testimony as to specific issues, including: 1) the continuum of force employed by officers generally; 2) the specific training that officers receive; 3) whether defendant's conduct violated specific police standards or practices; and 4) opinions as to whether specific actions taken by defendant were warranted under the circumstances presented); *Norman v. City of Lorain, Ohio*, 2006 WL 5249725 at *3 (N.D.Ohio, Nov. 27, 2006)(unpublished)(expert may testify concerning proper procedures to be followed in the situation facing the officer, but may not testify that the force used by the officer was "unreasonable" or "unnecessary" or otherwise express any legal conclusions while testifying). *See also DeMerrell v. City of Cheboygan*, 206 Fed.Appx. 418, 426 (6th Cir., Oct. 31, 2006)(unpublished)(expert's conclusions that it was "objectively unreasonable" for the officer to shoot the suspect; that "a reasonable officer on the scene would not have concluded at the time that there existed probable cause that [the suspect] posed a significant threat of death or serious physical injury to the officer or others"; and the use of deadly force by the officer was "improper and unnecessary" were improper legal conclusions). Thus, the Court finds that Lt. Day's testimony regarding KSP's policies and procedures is helpful to a jury considering whether Trooper Taylor's actions toward King were "objectively reasonable" in light of the facts and circumstances confronting him.

Plaintiffs also downplay the relevance of Lt. Day's testimony to Plaintiffs' negligence claim against Trooper Taylor. Whether Trooper Taylor complied with KSP policies and procedures is relevant to Plaintiffs' allegations that Trooper Taylor's conduct was negligent, reckless or wanton. Plaintiffs argue that testimony regarding KSP policies and procedures is not relevant to their

negligence claim because Trooper Taylor's compliance with KSP policies and procedures does not necessarily mean that he was not negligent. Although Plaintiffs are free to argue this point at trial, this argument does not justify precluding evidence of Trooper Taylor's compliance with KSP policies and procedures altogether. Rather, Trooper Taylor's compliance with KSP's policies and procedures is a factor that may be considered by the jury when evaluating whether Trooper Taylor acted reasonably in the course of his interaction with King.

More importantly, Plaintiffs are seeking punitive damages from Trooper Taylor. Punitive damages are available under Kentucky law if a plaintiff proves by clear and convincing evidence that a defendant acted with oppression, fraud or malice. KRS § 411.184(2). Punitive damages may also be awarded where "gross negligence" is shown. *Williams v. Wilson*, 972 S.W.2d 260, 262-65 (Ky. 1998). In Kentucky, the "prevailing understanding defines gross negligence as a 'wanton or reckless disregard for the safety of other persons.' It is not necessary that the jury find the defendant to have acted with express malice; rather, it is possible that a certain course of conduct can be so outrageous that malice can be implied from the facts of the situation." *Kinney v. Butcher*, 131 S.W.3d 357, 359 (Ky. App. 2009)(citation omitted). Evidence regarding Trooper Taylor's compliance with KSP's policies and procedures is certainly helpful to a jury determining whether Trooper Taylor's actions were outrageous or whether he acted with a "wanton or reckless disregard for the safety of other persons." For all of these reasons, the Court finds that Lt. Day's testimony regarding KSP's policies and procedures, including his opinion on Trooper Taylor's compliance therewith, is relevant and helpful to the jury.

In the alternative, Plaintiffs argue that, even if Lt. Day's testimony is relevant, it should be excluded under FRE 403, as any probative value of the testimony would be outweighed by the

11

potential for confusing the issues and misleading the jury. Specifically, Plaintiffs express concerns that the jury will confuse compliance with KSP policies and procedures with compliance with the requirements of the Constitution. It is true that an expert cannot provide testimony amounting to a legal conclusion, such as offering an opinion that Trooper Taylor's actions were constitutional, as "[i]t is not for the witnesses to instruct the jury as to the applicable principles of law, but for the judge." *United States v. Zipkin*, 729 F.2d 384, 387 (6th Cir. 1984)(quoting *Marx & Co., Inc. v. Diner's Club*, 550 F.2d 505, 509-510 (2d Cir.) *cert. denied* 434 U.S. 861 (1977)). For example, testimony that certain behavior amounts to negligence under the law is inadmissible. *Shahid v. City of Detroit*, 889 F.2d 1543, 1547-1548 (6th Cir. 1989).[2] However, Lt. Day does not purport to be offering any opinion as to whether or not Trooper Taylor's actions were constitutional. Rather, his report clearly states only that, in his opinion, Trooper Taylor acted in "accordance with his training, accepted police practices, and that no actions taken by Taylor violated any KSP policy and procedure" [DE # 75-3]. In fact, Lt. Day appears to be acutely aware of the limitations of his testimony. In his deposition, Lt. Day makes clear that he is *not* offering testimony about the Constitution or the laws of the United States [DE #75-4]. Lt. Day also specifically agrees that he is not being offered to testify that, because Trooper Taylor complied with KSP policies and procedures, he is in compliance with the requirements of the Constitution or § 1983 [*Id.*]. Instead, Lt. Day clarifies that his testimony is only "that Trooper Taylor acted in accordance with policy and

---

[2]However, under Rule 704 of the Federal Rules of Evidence, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704. *See also Woods v. Lecureux*, 110 F.3d 1215, 1219 (6th Cir. 1997)("Rule 704 removes the general proscription against opinions on 'ultimate issues' and shifts the focus to whether the testimony is 'otherwise admissible.'") (citations omitted).

procedure and accepted police practices as I have trained and taught people" [*Id*.]. In addition, the jury will be instructed that their instructions on the applicable principles of the law come from the Court, not the witnesses or lawyers. This instruction is sufficient to address the risk of confusion, if any, resulting from the admission of Lt. Day's testimony. Thus, the Court finds that the probative value of Lt. Day's testimony is not outweighed by the potential for confusing the issues or misleading the jury.

Finally, Plaintiffs' motion also refers to the inadequacy of the information upon which Lt. Day's opinions are based. However, to the extent that Plaintiffs dispute the basis of Lt. Day's opinions, or object to the sufficiency of the information provided to Lt. Day before he rendered his opinions, such information goes to the credibility and weight of Lt. Day's opinion and may be addressed through cross examination.

### IV. CONCLUSION

In conclusion, there is no dispute that Lt. Day is qualified in the field of police practices and procedures. His testimony will assist the trier of fact in evaluating whether Trooper Taylor's actions toward King were "objectively reasonable," whether Trooper Taylor was negligent towards King, and/or whether Trooper Taylor acted with malice or was grossly negligent in his interaction with King. Thus, the Court finds that Lt. Day's proposed testimony satisfies the requirements of *Daubert* and Rule 702. Accordingly, Plaintiffs' motion in limine to exclude the testimony of Kentucky State Police Lt. Bobby Day [DE # 75] is hereby **DENIED**.

This May 8, 2013



**Signed By:**
*Karl S. Forester* KSF
**United States Senior Judge**